McFarland, J.,
delivered the opinion of the court.
The first of these bills was filed June 30, 1867, by John W. Porter surviving administrator, with the will annexed of R. J. Porter, deceased, who died in August, 1861, leaving his entire estate, by will, to his mother Ellenora Porter during her life, with remainder to his sister Elizabeth Porter, both of whom had died intestate before the filing of this' bill — which was filed as an insolvent bill and for other purposes. On the same day said John W. Porter, in his own right, filed another bill in which he alleged that for a number of years, he and said R. J. Porter, who was his brother, had been in partnership as farmers and traders; that in the year 1860, they had dissolved and agreed upon a division of the partnership property, which consisted principally of land and slaves. He, said John W., taking the land, the title to all of which was in the name of R. J. Porter, and said R. J. taking the slaves, which exceeded the value of the lands by several hundred dollars, and this constituted a debt from said R. J. to J. W. Porter; that each took and held possession of the property allotted them in the division, but no ooveyanees were *586 executed. The object of this bill was to consummate this division of the partnership property, and have a decree for the balance due the complainant on settlement.
Subsequently another bill was filed by John M. and W. A. Smith, charging that said R. J. Porter was in his lifetime their guardian during their minority, and as such had a large amount in his hands, of which they pray an account. This bill brings into court the securities of R. J. Porter on his guardian bond, Wallis Hays and P. A. Neil. Thereupon, said Hays and Neil filed a bill, in which they charge that the estate of R. J. Porter at the time of his death was amply solvent; that the assets have been converted and wasted by the complainant John W. Porter, and his co-administrator W. R. Porter, who has since died. This bill points out various items with which they insist the complainants should be charged. They also insist that the complainant should be held chargeable with the value of the slaves; that the three tracts of land claimed by him, as having been allotted to him in the division of the partnership assets, in reality belong to the estate of said R. J. Porter, making it amply solvent. They deny that there is any valid debt due to the complainant J. W. Porter.
In the progress of the cause, a tract of land, of which it is conceded R. J. Porter was equitable owner in his own right, was sold, and a small balance of purchase money paid, and the surplus held subject to the further order of the court. An ac *587 count was ordered and taken, and the report of the master filed, showing as a general result that the estate of R. J. Porter would pay about 50 cents on the dollar. This report also shows as a part of the indebtedness, the amount in the hands of R. J. Porter as guardian of John M. and W. A. Smith. A part of this was shown to have been used in the purchase of the partnership lands. The balance, the report shows, was received from the estate of their Father in Alabama, and not accounted for.
Exceptions were taken to this report, by J. W. Porter and by Wallis Hays. ' The exceptions of Porter were overruled upon the hearing, and part of the exceptions of Hays were overruled and a part sustained, and the cause recommitted for further proof upon the questions raised by this latter class of exceptions by Hays. From this decree, J. W. Porter and Hays have prosecuted an appeal under section 3157 of the Code. The questions argued, relate principally to matters raised by these exceptions.
It is very clear that this is not a final decree. An appeal may be prosecuted from a decree, settling principles and ordering an account, before the account is taken. It will be observed here however, that the heirs and distributees of Elizabeth Porter, to whom on her death the estate passed, she being the sole legatee and devisee, have not appealed ' from the decree, in fact seem to have made no contest. They being the said J. W. Porter, the two Smiths and others. We do not say that this decree does not settle principles affecting their rights from which they *588 might have prosecuted an appeal in the present attitude of the case, but we are now to consider the questions raised by the appeal of Hays and J. W. Porter. Hays’ only interest is as security of P. J. Porter on his guardian bond: to the extent he may be held liable to the Smiths upon this bond, he has such an interest in the estate of E. J. Porter as would entitle him to an appeal from any decree affecting his rights, and he has the right to show the estate to be solvent, either by contesting the validit}r of other claims or by showing assets of the estate; charging the administrator with a devastavit or otherwise. He has also the right to contest the claim of the Smiths, although the administrator does not.
The report of the master shows E. J. Porter’s estate liable to the two Smiths, in about the sum of §3,508.97, including interest on this sum. About §580.58 was used in the purchase of the partnership lands, now claimed by J. W. Porter, and the decree of the Chancellor declares this sum to be a lien on this land, and directs J. ~W. Porter to pay this sum into court, or in default thereof, a sale of the land is ordered. The balance of the §3,508.97 the master reports as received by E. J. Porter from the estate of Smith in Alabama, but the Chancellor sustained the exception of Hayjs to these items and recommitted the cause for further proof. Now, if it shall turn out, upon the hearing of further proof, that the estate of E. J. Porter is not liable for this sum, then it is clear that this exonerates Hays altogether, and he has no further interest in the litigation, and *589 if the heirs choose to submit to the decree against them it will be conclusive upon all others. It may also result that Hays has no further interest, although the estate be held liable for the fund alleged to have been received in Alabama, for it may turn out upon further proof, and a further report upon other matters recommitted to the master, that the estate is solvent and Hays’ liability thus at end.
We are therefore of opinion that this decree, in -the present attitude of the casé, does not decide any principle against Hays from which he has the right to appeal before taking the account. We think it very clear that this court will not consider exceptions to a report when the Chancellor has overruled part, and recommitted other matters for further proof. This would be settling matters of account by piecemeal. The parties cannot appeal separately from the action of the Chancellor upon each separate exception. The decree below must reach a final and definite result upon the matters of account, before it can be reviewed in this court. The appeal of Porter is specially from the action of the Chancellor in overruling his exceptions.
It would perhaps be more convenient to the parties if we could now settle some of the questions in the case, but we cannot do so.
The appeal must be dissmissed, and the cause remanded for final action in the court below. The costs of this court will be divided.